# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

Reporter of Decisions:
Kimberly K. Muschong

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

PEOPLE v HAUPT

Docket No. 167315. Argued on application for leave to appeal March 10, 2026. Decided July 30, 2026.

Defendant, Alexander J. Haupt, was arrested on a misdemeanor stalking charge in September 2017 in relation to 17-year-old AM. The police obtained a warrant to search defendant's cell phone for evidence related to the stalking allegations, and, after finding naked photos of AM, they obtained a second warrant to search the phone for evidence of child sexually abusive material (CSAM). In that search, police found images of AM naked or performing sexual acts, as well as text messages and e-mails indicating that defendant had sold the images to a third party and an audio file in which defendant tried to coerce AM into withdrawing a pending criminal complaint. Defendant was subsequently charged in the Clare Circuit Court with producing CSAM, distributing CSAM, possessing CSAM, using a computer to commit a crime, and obstructing justice.

Defendant had troubled relationships with both the attorney he had retained and the attorney he was later appointed, and, as a result of their motions to withdraw, defendant either was entirely without counsel or had only advisory counsel during some of the pretrial proceedings, including a hearing on June 25, 2019, at which the court considered whether to allow the admission of AM's preliminary-examination testimony, and a hearing on July 2, 2019, at which the court considered his motion to suppress the evidence obtained in the original search of his cell phone and his motion to dismiss. The trial court, Roy G. Mienk, J., conducted the latter hearing without advising defendant of his continuing right to the assistance of counsel. The trial court later held a hearing on the prosecution's motion to compel and strike defense witnesses and exhibits at which neither defendant nor his advisory counsel was present, and the court later granted the motion. On the day that trial was scheduled to begin, defendant stated on the record that he planned to stand mute, alleging that the trial court had violated MCR 6.005 by failing to provide an attorney except in an advisory capacity. The trial court responded by reappointing the attorney who had been serving in an advisory capacity only and adjourning trial until the following day. After a two-day trial, defendant was found guilty as charged.

Defendant appealed as of right, arguing that the trial court had deprived him of his Sixth Amendment right to counsel by allowing his attorney to withdraw without appointing substitute counsel. The Court of Appeals, MURRAY, C.J., and M. J. KELLY and O'BRIEN, JJ., affirmed in an

unpublished per curiam opinion, issued September 23, 2021 (Docket No. 351593) (*Haupt I*), holding that even though defendant had not validly waived his right to counsel and the trial court had not complied with *People v Anderson*, 398 Mich 361 (1976), and MCR 6.005(D) in allowing defendant to proceed *in propria persona*, defendant could not show entitlement to relief under the standard for plain-error review in *People v Carines*, 460 Mich 750 (1999). The panel also suggested that defendant might have forfeited his right to counsel through his own conduct. Defendant applied for leave to appeal in the Supreme Court, which held the case in abeyance for *People v Posey*, 512 Mich 317 (2023), *People v Stewart*, 512 Mich 472 (2023), and *People v King*, 512 Mich 1 (2023). 973 NW2d 147 (2022). After those cases were decided, the Supreme Court vacated the Court of Appeals' decision in *Haupt I* to the extent it was inconsistent with *King* (regarding deprivation of trial counsel) and *Posey* (regarding review of within-the-guidelines sentences), remanded defendant's case to the Court of Appeals for reconsideration in light of those decisions, and otherwise denied leave. 513 Mich 912 (2023) (*Haupt II*).

On remand, the same Court of Appeals panel again affirmed in an unpublished per curiam opinion, issued April 25, 2024 (Docket No. 351593) (*Haupt III*), concluding that defendant had not been deprived of counsel during any critical stage of the proceedings. Defendant again applied for leave to appeal in the Supreme Court, which ordered oral argument on the application and directed the parties to address whether (1) defendant had validly waived his right to counsel following defense counsels' motions to withdraw on October 23, 2018, and June 10, 2019; (2) defendant forfeited his right to counsel through his conduct and remarks as in *People v Kammeraad*, 307 Mich App 98 (2014); and (3) the periods for which defendant was without counsel constituted critical stages of the proceedings. ___ Mich ___; 21 NW3d 587 (2025).

In an opinion by Justice BOLDEN, joined by Chief Justice CAVANAGH and Justices WELCH, THOMAS, and HOOD, the Supreme Court, in lieu of granting leave to appeal, *held*:

Defendant was deprived of counsel at a critical stage of his criminal proceedings, and he did not validly waive his right to counsel or forfeit his right to counsel through his conduct. Accordingly, reversal was required.

1. The *Haupt I* panel correctly held that the trial court failed to substantially comply with the requirements of *Anderson* and MCR 6.005(D). Defendant did not make a request for self-representation, let alone an unequivocal request, and because the trial court failed to advise defendant of the charges, the risk of self-representation, and the opportunity to consult with another attorney, any alleged waiver was not knowing and intelligent. The trial court also did not consider whether the self-representation would disrupt the court. Accordingly, automatic reversal is appropriate if defendant was unrepresented at any critical stage.

2. Assuming without deciding that the forfeiture-by-conduct doctrine exists in Michigan, defendant did not forfeit his right to counsel by conduct. At no point did defendant refuse to remain in the courtroom, refuse to participate in the proceedings, insist that the court could not proceed at all, or engage in the kind of purposeful and defiant obstruction and disruption of the court's proceedings that were present in *People v Kammeraad*, 307 Mich App 98 (2014).

3. The Court of Appeals erred by concluding that the July 2, 2019 hearing on the motion to suppress evidence did not constitute a critical stage of the criminal proceedings. The Supreme Court has not adopted a formal test for determining what constitutes a critical stage of a criminal proceeding, and no binding authorities have established whether suppression hearings are critical stages for purposes of the Sixth Amendment right to counsel. The United States Court of Appeals for the Sixth Circuit in *Van v Jones*, 475 F3d 292, 312 (CA 6, 2007), noted that its decisions and those of the United States Supreme Court have offered several possibilities for what could constitute a critical stage, each of which required consideration of the likelihood that significant consequences have resulted from the absence of counsel. *Van* also noted that the proper assessment of such likelihood for weighty criminal matters of constitutional dimension is made by applying the reasonable-probability standard. Further, *Van* opined that the best way to make this assessment is by asking whether the defendant had an opportunity subsequent to the hearing in question to recover or exercise any privilege that may have been lost at that hearing.

In concluding on remand that defendant's suppression hearing was not a critical stage under the circumstances, the Court of Appeals panel erred by distinguishing *Henderson v Frank*, 155 F3d 159 (CA 3, 1998), and *United States v Hamilton*, 391 F3d 1066 (CA 9, 2004), both of which determined that suppression hearings are critical stages of criminal proceedings. Although the panel differentiated *Henderson* and *Hamilton* because defendant had no witnesses and the defendants in those cases did, whether witnesses were called is but one factor that trial courts may consider when determining whether a stage is critical to a defendant's criminal proceedings. In this case, defendant's entire pretrial attempt to suppress cell phone evidence was under the conditions of the trial court demanding that defendant proceed unrepresented by counsel. Under these circumstances, he was wholly deprived of the right to counsel to argue the admissibility of evidence that would speak directly to his ultimate guilt or innocence at trial, and he could not wholly recover the privilege he lost during the hearing. Although defendant's appointed counsel did move to suppress evidence obtained during the second search of defendant's cell phone, defendant was deprived of counsel when seeking to suppress different evidence, namely, data and images extracted during the first search of the phone that were directly correlated to his ultimate guilt. A subsequent opportunity to object at trial does not necessarily recreate the lost opportunity to litigate suppression with counsel before trial. Once the trial court denied defendant's motion to suppress, the parties' trial posture changed. The later reappointment of counsel on the morning of trial did not cure the earlier uncounseled rulings because counsel was not given a meaningful opportunity to prepare the case with those evidentiary questions still open. Accordingly, the July 2, 2019 hearing on the motion to suppress constituted a critical stage of the criminal proceedings.

Court of Appeals judgment reversed; defendant's convictions and sentences vacated; and case remanded to the trial court for a new trial.

Justice HOOD, concurring, joined the majority opinion in full. He wrote separately because, while he agreed that the hearing on the suppression motion represented a critical stage of the proceedings, he would have gone further and concluded that the six weeks immediately preceding the trial constituted its own critical stage. Rather than looking at the motion hearings individually, as the Court of Appeals panel did, Justice HOOD would have considered defendant's six weeks of self-representation in the aggregate, explaining that what happens in the preparation period

immediately preceding trial can have a significant effect on the outcome of trial, as the United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, and Michigan appellate courts have acknowledged. In this case, defendant's lack of counsel hindered his ability to conduct pretrial investigation and otherwise prepare for trial, as demonstrated by the fact that the motions he filed were disorganized, legally underdeveloped, and lacking in legal sophistication, whereas the Fourth Amendment jurisprudence governing the possible suppression of the evidence against him was complicated and nuanced. In addition to the pretrial hearing, status conference, and motion hearings that occurred during this time frame, the six weeks before trial were a vital time for trial preparation outside the courtroom. In sum, because defendant was denied his Sixth Amendment right to counsel at a critical stage of the proceedings, Justice HOOD agreed fully with the majority opinion, but he would have gone further on the basis of the specific facts of this case.

Justice ZAHRA, joined by Justice BERNSTEIN, concurring, agreed that defendant was deprived of counsel during a critical stage and is therefore entitled to a new trial, but wrote separately to make clear that his agreement was grounded in the facts of the case. He would have declined to analyze the merits of defendant's argument that the trial court erred by failing to comply with MCR 6.005(D) and that his Sixth Amendment right to counsel was violated. Because *Haupt I* was vacated only to the extent that it was inconsistent with *King*, the Court of Appeals' conclusion that there had been a violation of *Anderson* and MCR 6.005(D) was left intact, which should have ended the analysis as to whether defendant had been impermissibly deprived of counsel and left only the question whether this error entitled defendant to relief. He also clarified that, while he agreed that the July 2, 2019 suppression hearing constituted a critical stage given the facts of this case, it did not follow that all motions to suppress constitute critical stages, and it was unnecessary in this case to consider more broadly whether suppression hearings with different factual circumstances would also constitute a critical stage. In all other respects, he concurred with the majority opinion.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 30, 2026

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                       No. 167315

ALEXANDER JAMES HAUPT,

       Defendant-Appellant.

BEFORE THE ENTIRE BENCH

BOLDEN, J.

In this case, we consider whether defendant, Alexander J. Haupt, validly waived his right to counsel and, if not, whether he was deprived of counsel during a critical stage of his criminal prosecution in violation of his Sixth Amendment rights. Initially, defendant validly waived the right to counsel. Later, he reinvoked the right to counsel and counsel was appointed. Appointed counsel later moved to withdraw his representation. In granting the motion, the trial court ordered defendant to proceed to trial without counsel without

first demonstrating on the record that defendant was advised of his continuing right to counsel or ensuring that defendant validly waived that right. On appeal, the Court of Appeals held that defendant's waiver was invalid because the trial court did not comply with MCR 6.005(D) but that the error did not warrant reversal. *People v Haupt*, unpublished per curiam opinion of the Court of Appeals, issued September 23, 2021 (Docket No. 351593) (*Haupt I*), p 3. Subsequent to this decision, we held that violations of MCR 6.005(D) are subject to automatic reversal when the result is deprivation of the right to counsel at a critical stage of a criminal proceeding and that the forfeiture doctrine does not apply to such errors. *People v King*, 512 Mich 1; 999 NW2d 670 (2023). The Court of Appeals reconsidered its prior holding in light of *King* and held that the pretrial periods during which defendant lacked counsel were not critical stages of the proceedings. *People v Haupt (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued April 25, 2024 (Docket No. 351593) (*Haupt III*), pp 4-7.

We must now determine whether defendant was deprived of counsel at a critical stage. We hold that he was indeed deprived of counsel at a critical stage and that this structural error is subject to automatic reversal. Therefore, we reverse and remand for a new trial.

## I. FACTS AND PROCEDURAL HISTORY

### A. UNDERLYING CRIME

Defendant was 19 years old when he had a dating relationship with 17-year-old AM. In September 2017, defendant was arrested on a misdemeanor stalking charge related to AM. At the time of his arrest, the police confiscated defendant's cell phone and obtained a warrant to search the phone for evidence related to the stalking allegations. During the

2

initial search, police observed naked photos of AM, and they obtained a second warrant to search the phone for evidence of child sexually abusive material (CSAM). During the second search of the phone, police found images of AM naked or performing sexual acts on or within 24 hours of December 19, 2016, when AM was 17 years old. They also uncovered text messages and e-mails indicating that defendant had sold the images to a third party. Finally, police discovered an audio file in which defendant tried to coerce AM into withdrawing a pending criminal complaint. As a result, defendant was charged with a host of crimes: producing CSAM, distributing CSAM, possessing CSAM, using a computer to commit a crime, and obstructing justice.[1]

## B. PRETRIAL

Defendant initially retained attorney Scott Grabel as counsel. In April 2018, Grabel moved to withdraw because of a lack of communication with defendant. Defendant objected and indicated he would communicate with Grabel moving forward. The trial court denied the motion. Grabel again moved to withdraw in June 2018, citing a breakdown in the relationship; specifically, Grabel testified that when he strongly encouraged defendant to take a plea deal, defendant said he was "going to get" Grabel's law license.[2]

---

[1] Defendant was charged with the misdemeanor stalking offense for which he was arrested in a separate case that is unrelated to the appeal here.

[2] At the hearing, Grabel emphasized that defendant had "always been respectful" when speaking with Grabel and that defendant had "abided by all terms and conditions of bond." Grabel also assured the court that he felt neither threatened nor assaulted by defendant and was "not worried that his bar license was being threatened," but said he did not think the relationship could continue given defendant's comments about his law license.

Defendant objected. When the trial court asked defendant whether he was "in agreement that" Grabel should withdraw, defendant asserted, "No. No, I'm not." When the trial court asked defendant whether he had confidence in Grabel's representation, defendant stated, "Yes. Yes, I have confidence in him." Defendant then explained:

> The relationship we built up over time just, to me, shows that, you know, occasionally, like myself, if he gets worked up, you know, we might spiral a little bit, but at the end of the day we do—you know, the work is really good. I have full confidence in him.

The trial court granted Grabel's motion and adjourned the proceedings to allow defendant to hire a new attorney.

On August 1, 2018, defendant appeared for a status conference without counsel. Defendant informed the court that he was having issues "finding adequate representation," suggesting that it was because of a lack of funds. The trial court said that it was "concerned" that it was "going to be set back on the trial docket." The court told defendant, "You can represent yourself if you don't hire somebody." The trial court also stated: "A trial will be set probably 60 days out. You better be prepared to go. I'm not going to do any more adjournments." The trial court did not inform defendant that he could be appointed an attorney if he could not afford one.

At a pretrial hearing on October 23, 2018, defendant again appeared without counsel. The following exchange between the trial court and defendant occurred:

> *The Court*: You do have the ability to hire your own attorney?
>
> *The Defendant*: Not at the moment, Your Honor.
>
> *The Court*: Not at the moment? Well, you are entitled to have an attorney represent you, as the Court told you last time we were in court.

4

*The Defendant*: I was not informed last time. It was not offered. I have a transcript as well.

*The Court*: All right. Well, you are entitled to have an attorney represent you, and if you're unable to afford one, the Court will appoint one. Are you asking the Court to appoint you an attorney?

*The Defendant*: Not at the moment, Your Honor.

*The Court*: All right. And you understand that you're entitled to a lawyer's assistance? You understand that; is that correct?

*The Defendant*: I do, yep.

*The Court*: All right. And you're waiving the right to be represented by a court appointed attorney at this time; is that correct?

*The Defendant*: That is correct, your honor.

*The Court*: And you understand the charge and the maximum possible prison sentence if—

*The Defendant*: I do. I do, Your Honor.

*The Court*: And do you understand the risk involved in self-representation?

*The Defendant*: I do, Your Honor.

After defendant acknowledged several further warnings, the court determined that defendant had made a knowing, intelligent, and voluntary waiver of the right to counsel.[3]

After the trial court accepted the waiver, defendant requested a remand to the district court for a preliminary examination. Noting that the trial was scheduled to take place the following week, the trial court denied the motion and admonished defendant for not filing

---

[3] Defendant does not claim any error regarding this waiver of counsel.

5

the motion sooner.[4]  Three days later, defendant requested a court-appointed attorney, and the trial court appointed Scott Moore and adjourned the trial.  Thereafter, Moore filed a motion to remand to the district court for a preliminary examination, which the trial court granted.

In early June 2019, Moore moved to withdraw.  At the June 10, 2019 status conference, Moore explained that he wanted to withdraw because defendant had questioned Moore's truthfulness and there had been a complete breakdown of communications.  Defendant told the court that he had evidence that Moore was working with the prosecution.  In response to this assertion, the trial court stated:

> This is your second attorney.  You hired an attorney and he withdrew, and he filed a motion to withdraw that I denied, and then a few months later again he wanted to withdraw.  The Court allowed him.  At that time you said you would represent yourself.  Several months later you come back in asking for a court appointed attorney.  When you asked to represent—when you said you were representing yourself, you said you would do a better job than any court appointed attorney could.
>
> So at this point I'm not going to allow Mr. Moore to withdraw totally, but he's not going to have to represent you.  He's going to be there for advisory purposes.  *So at this point, you are on your own, and you're going to have to represent yourself*, and if you have any questions regarding the law, Court Rules or anything, Mr. Moore is the person you're going to have to go to.  [Emphasis added.]

Notably, defendant did not make a request to represent himself at this time.  Further, the court stated that it was not going to adjourn the scheduled July 23, 2019 trial date and that

___

[4] Specifically, the court stated: "[S]ee, this is the problem for you not hiring an attorney or asking for an attorney. . . .  Because as an attorney, you can schedule court dates.  You could—it was on your responsibility.  And this is your risk of self-representation . . . ."  Defendant had been self-represented for only a few minutes when the court made these remarks, as no previous waiver had been obtained.

6

if defendant hired another attorney, that attorney would need to be prepared for trial, explaining: "This case is old, and your actions have delayed this case; nobody else's actions but yours. And the Court is not going to allow you to delay this any longer."

Defendant represented himself at the June 25, 2019 final pretrial hearing. The prosecutor noted then that AM would be away at annual military training from July 12 to 28, 2019. The prosecutor said that while AM's testimony would be helpful, it was not necessary, but noted that defendant had a right to have her present and needed to advise what he wanted, because if he wanted her present then the trial would need to be rescheduled. The court noted that AM had testified at the preliminary examination. The prosecutor responded that the witness had been subject to cross-examination at the preliminary examination and offered to move to have that testimony read into the record, if the court would like the prosecution to do so. The court said that it would. The court then told defendant that he could draft a subpoena for AM that the court would sign, but that the military might not honor it. Defendant noted that he had motions he wanted to file and was inexperienced, and the court briefly explained the process.

Defendant, acting *in propria persona*, moved to suppress the data and photographic evidence obtained in the original search of his cell phone and also moved to dismiss. At the July 2, 2019 hearing on the motions, defendant argued that the police did not have probable cause to search through the entirety of his cell phone. The trial court conducted the hearing without advising defendant of his continuing right to the assistance of counsel. The trial court denied defendant's motion to dismiss and took the motion to suppress under advisement. The prosecution also argued its motion to use AM's preliminary-examination testimony. Defendant stated that he had never received a copy of the motion but offered a

rebuttal argument anyway.[5] Defendant asserted that the prosecution had not exercised due diligence to produce the complaining witness, had not issued a subpoena, and should have had notice of her military training schedule earlier.[6] The trial court granted the prosecution's motion.

On July 12, 2019, the trial court held a hearing on the prosecution's motion to compel and strike defense witnesses and exhibits. Defendant did not file a response to the prosecution's motion, and he was not present at the hearing, nor was Moore present as advisory counsel. The court noted that it could rule on the motions without defendant's being present or making an argument because it "is not considered a critical stage of the proceedings." After stating that the witnesses and evidence that the prosecution had requested to be struck from the record were not issues relevant to the case, the court granted the motion.

## C. TRIAL

The jury trial was set to begin on July 23, 2019. On that day, the trial court first announced that it was denying defendant's motion to suppress. The court next noted that

---

[5] The prosecutor indicated that the motion to use AM's preliminary-examination testimony had been sent to defendant's father and that defendant's father responded via e-mail indicating that he had printed it and provided it to defendant. The prosecutor read defendant's father's e-mail into the record.

[6] The prosecutor stated on the record that a subpoena or notice had been sent, but the complainant advised she was on military orders, and the prosecutor said she could not subpoena someone on active duty. In response, defendant stated that the proper process would be to subpoena the commanding officer. The trial court advised defendant that if he could "somehow subpoena the witness and get her here, and she appears, then we wouldn't allow the use of the prior record testimony, only in the case that she changes her testimony on the stand."

8

defendant had filed a response to the motion to strike, which the court had already granted. The court treated the response as a motion to reconsider and denied it. The court noted that both sides had filed motions to compel, but the court did not find that either side was withholding evidence.

The parties discussed a July 18, 2019 telephone status conference that defendant had not attended. Moore told the court that since he was made advisory counsel, defendant had not reached out to him for any advice until that morning (July 23, 2019), when defendant asked about the phone conference.

The prosecution then requested an order excluding discussion of AM having voluntarily sent any images to defendant, because that was not a defense to the charged offenses. When the court asked defendant for his response to this motion, defendant said, "I'm going to stand mute from this point on, as the Court is in violation of MCR rule 6.005.[7] I did not—I did not say I did not want an attorney. I told you on the record I wanted an attorney. You have not provided one, and an advisory capacity is limited to those who—" The trial court interrupted, stating: "You have an attorney. It's Mr. Moore. If you want an attorney, he's ready and he's here today." When the court asked defendant directly if he wanted an attorney, he said, "Yes, I do, Your Honor." The court then reappointed Moore. When the court asked Moore if he had a response to the motion in limine, he said that he was not prepared, but that he relied on the discretion of the court and believed the prosecution would not misstate the law. The court then granted the motion

---

[7] As will be discussed, MCR 6.005 provides various rules concerning when and how the trial court must advise criminal defendants in regard to their constitutional right to counsel.

to exclude any argument that AM had consensually sent the photographs. After a brief recess, Moore said that they were "unprepared based almost completely on the defendant's own actions." The court, therefore, granted defendant an adjournment.

The jury trial was held over the next two days. During trial, Moore verbally moved to suppress evidence obtained from a search of the cell phone's hardware that was conducted after the police had searched and seized the photographs and data from within the phone. That motion was denied. Defendant was found guilty as charged. He was sentenced to a controlling term of 6 years and 6 months to 20 years' imprisonment for the convictions of CSAM and using a computer to commit a crime. Defendant was paroled on January 13, 2026.

## D. APPEAL

Defendant appealed as of right, and the Court of Appeals affirmed. Defendant argued that the trial court had deprived him of his Sixth Amendment right to counsel by allowing Moore to withdraw without appointing substitute counsel. The panel treated this claim as unpreserved, and it concluded that even though defendant had not validly waived his right to counsel and the trial court had not complied with MCR 6.005(D), defendant could not show entitlement to relief under the standard for plain-error review in *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999). See *Haupt I*, unpub op at 2-3. The Court of Appeals also stated that the trial court's noncompliance with MCR 6.005(D) was not outcome-determinative and suggested that defendant may have forfeited his right to counsel by his own conduct that "delayed the case for over two years[.]" *Id*. at 4.

10

Defendant applied for leave to appeal, raising several issues, including whether the Court of Appeals properly concluded that no relief was available for the trial court's failure to comply with MCR 6.005(D). This Court initially held the case in abeyance for *People v Posey*, 512 Mich 317; 1 NW3d 101 (2023), *People v Stewart*, 512 Mich 472; 999 NW2d 717 (2023), and *King*, 512 Mich 1. *People v Haupt*, 973 NW2d 147 (2022).

After those cases were decided, this Court vacated the Court of Appeals' decision in *Haupt I* to the extent it was inconsistent with *King* (regarding deprivation of trial counsel) and *Posey* (regarding review of within-the-guidelines sentences), remanded defendant's case to the Court of Appeals for reconsideration in light of those decisions, and otherwise denied leave. *People v Haupt*, 513 Mich 912 (2023) (*Haupt II*). On remand, the Court of Appeals again affirmed, concluding that defendant had not been deprived of counsel during any critical stage of the proceedings. *Haupt III*, unpub op at 4.[8] Defendant again applied for leave to appeal in our Court. We ordered oral argument on the application and directed the parties to address whether:

> (1) the defendant validly waived his right to counsel following defense counsels' motions to withdraw on October 23, 2018 and June 10, 2019, see *People v King*, 512 Mich 1, 11-12 (2023); *People v Anderson*, 398 Mich 361, 367-368[; 247 NW2d 857] (1976); MCR 6.005(D); (2) the defendant forfeited his right to counsel through his conduct and remarks, see *People v Kammeraad*, 307 Mich App 98, 130-137[; 858 NW2d 490] (2014); and (3) if the defendant's waivers of his right to counsel were not valid and he did not forfeit his right to counsel, do the periods for which the defendant was without counsel constitute critical stages of the

---

[8] *Posey* addressed other issues defendant raised in his direct appeal, but it did not involve the right to counsel or questions about MCR 6.005(D). See *Posey*, 512 Mich 317. It did not affect the Court of Appeals' analysis of the issues now before us and is not addressed in this opinion.

11

proceedings, see *King*, 512 Mich at 15-16; *United States v Wade*, 388 US 218, 225-227[; 87 S Ct 1926; 18 L Ed 2d 1149] (1967); *Van v Jones*, 475 F3d 292, 312 (CA 6, 2007). [*People v Haupt*, ___ Mich ___, ___; 21 NW3d 587, 587 (2025).]

## II. STANDARD OF REVIEW

The Sixth Amendment and Const 1963, art 1, § 20 guarantee the right to counsel at all critical stages of a criminal proceeding. *People v Loew*, 514 Mich 158, 191; 22 NW3d 323 (2024). This Court reviews de novo whether a defendant was denied this Sixth Amendment right. See *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). De novo review means that our review is independent and without deference to the lower courts. *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). Deprivation of counsel at a critical stage is a structural error subject to automatic reversal. *King*, 512 Mich at 16. The presence of standby counsel does not excuse an invalid waiver or render a Sixth Amendment violation harmless. *Id*. at 17.

## III. ANALYSIS

### A. SIXTH AMENDMENT RIGHT TO COUNSEL

A criminal defendant who faces incarceration has a constitutional right to counsel at all critical stages of the criminal process under the Sixth Amendment, which is applicable to the states through the Fourteenth Amendment. *People v Williams*, 470 Mich 634, 640-641; 683 NW2d 597 (2004). Representation by counsel " 'is the standard, not the exception, in the absence of a proper waiver.' " *People v Spears*, 346 Mich App 494, 504-505; 13 NW3d 20 (2023), quoting *People v Russell*, 471 Mich 182, 190; 684 NW2d 745 (2004). Accordingly, before allowing a criminal defendant to proceed pro se, the trial court must determine whether the request is unequivocal, whether the defendant is knowingly,

12

intelligently, and voluntarily waiving the right to legal counsel, and whether the defendant's self-representation will disrupt, unduly inconvenience, or otherwise burden the court and the administration of justice. See *Anderson*, 398 Mich at 367-368. In addition, the trial court must comply with MCR 6.005(D), which provides "direction concerning the timing and substance of the judicial inquiry to be made when a defendant affirmatively indicates he wishes to proceed pro se." *People v Dennany*, 445 Mich 412, 433; 519 NW2d 128 (1994). Specifically, MCR 6.005(D) provides, in part:

> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

"[I]f the trial court fails to substantially comply with the requirements in *Anderson* and the court rule, then the defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *Russell*, 471 Mich at 191-192. "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Russell*, 471 Mich at 191 (quotation marks and citation omitted).

In this case, defendant originally retained Grabel to represent him, but the trial court granted Grabel's motion to withdraw in June 2018. After that, Moore was appointed to

13

represent defendant in October 2018. When the trial court ultimately granted Moore's motion to withdraw in June 2019, the trial court instructed defendant as follows:

> This is your second attorney. You hired an attorney and he withdrew, and he filed a motion to withdraw that I denied, and then a few months later again he wanted to withdraw. The Court allowed him. At that time you said you would represent yourself. Several months later you come back in asking for a court appointed attorney. When you asked to represent—when you said you were representing yourself, you said you would do a better job than any court appointed attorney could.
>
> So at this point I'm not going to allow Mr. Moore to withdraw totally, but he's not going to have to represent you. He's going to be there for advisory purposes. *So at this point, you are on your own, and you're going to have to represent yourself*, and if you have any questions regarding the law, Court Rules or anything, Mr. Moore is the person you're going to have to go to.

Defendant alleged that the trial court erred by failing to comply with MCR 6.005(D) and that his Sixth Amendment right to counsel was violated. The Court of Appeals held in *Haupt I* that the trial court failed to comply with the substance of *Anderson* and MCR 6.005(D) but that relief was unavailable for this plain error because defendant did not object and was unable to show that relief was available under *Carines*. *Haupt I*, unpub op at 2-3. Defendant appealed, and this case was held in abeyance, in part, for *King*, 512 Mich 1. In *King*, we held that absent a valid waiver, depriving a defendant of the right to counsel at critical stages of their criminal proceedings is a structural error subject to automatic reversal. *Id*. at 4.[9] Thereafter, we vacated *Haupt I* only "to the extent that it is inconsistent with our decision[] in *King* . . . ." *Haupt II*, 513 Mich at 912. *King* did nothing to cast

---

[9] *King* explained that "[r]equiring a defendant who did not make a knowing and intelligent waiver of the right to counsel to recognize and object to their own waiver as invalid would be an impractical rule." *Id*. at 14-15.

14

doubt on the *Haupt I* panel's conclusion that an MCR 6.005(D) error occurred below. Therefore, our remand order required the Court of Appeals to determine whether defendant's invalid waiver deprived him of the right to counsel during a critical stage of his criminal proceedings.

On remand, the Court of Appeals proceeded with its prior conclusion that the trial court failed to comply with the substance of *Anderson* and MCR 6.005(D) before holding that defendant was not entitled to relief under *King* because he "was not deprived of counsel at a critical stage of the proceeding such that it constituted a structural error requiring automatic reversal." *Haupt III*, unpub op at 4. Accordingly, we left intact the Court of Appeals' conclusion that there was a violation of *Anderson* and MCR 6.005(D).

We agree with the *Haupt I* panel that the trial court failed to substantially comply with the requirements of *Anderson* and MCR 6.005(D).[10] Defendant did not make a request for self-representation, let alone an unequivocal request. See *Anderson*, 398 Mich at 367 ("[T]he request *must* be unequivocal.") (emphasis added). The trial court additionally failed to advise defendant of the charges, the risk of self-representation, and the opportunity to consult with another attorney, see MCR 6.005(D). Thus, it is clear that any alleged waiver was not knowing and intelligent. *Anderson*, 398 Mich at 368. Finally, the court did not consider whether the self-representation would disrupt the court. *Id*. Since the

---

[10] Although defendant argues that the trial court additionally erred by violating MCR 6.005(E), it is unnecessary for us to address whether relief would be available for such a violation, since we ultimately conclude that a new trial is warranted under MCR 6.005(D).

15

court failed to substantially comply with *Anderson* and MCR 6.005(D),[11] automatic reversal is appropriate if defendant was unrepresented at any critical stage, which we will discuss later in this opinion.[12]

## B.  FORFEITURE BY CONDUCT

The prosecution argues that defendant forfeited his right to counsel through his conduct.  We now consider that argument.

The Court of Appeals has held that "the right to assistance of counsel, cherished and fundamental though it may be, may not be put to service as a means of delaying or trifling with the court." *Kammeraad*, 307 Mich App at 130 (quotation marks and citation omitted).

---

[11] The prosecutor argues that because the trial court obtained a valid waiver in October 2018—after Grabel withdrew but before Moore was appointed—this constituted a valid ongoing waiver throughout the ensuing eight months in which defendant was represented by counsel.  However, we indulge every presumption against waiver. *People v Adkins (After Remand)*, 452 Mich 702, 721; 551 NW2d 108 (1996), abrogated in part on other grounds by *Williams*, 470 Mich at 640-641 & n 7.  We disagree that defendant's initial waiver of counsel could remain valid and coexist while he simultaneously exercised the right to counsel.  See *United States v Hantzis*, 625 F3d 575, 580-581 (CA 9, 2010) (holding that a waiver of counsel remains valid "unless intervening events substantially change the circumstances").

[12] It is true that this Court left intact *Haupt I*'s conclusion of an invalid waiver when it remanded for reconsideration in light of *King*.  However, *Haupt III*'s critical-stage analysis required the existence of an invalid waiver.  In other words, if the trial court had obtained a valid waiver, there would have been no need for the panel to consider whether defendant had been unconstitutionally deprived of the assistance of counsel during a critical stage.  Recognizing this two-step analysis, this Court ordered oral argument not only on the critical-stage question, but also on whether a valid waiver had been obtained.  If the Court had not ordered oral argument on the issue, we would be more inclined to cabin our discussion to whether the hearing on the motion to suppress was a critical stage, as Justice ZAHRA suggests.  However, after receiving briefing and hearing oral argument on the issue of waiver, we find it appropriate to address both waiver and the critical-stage issue in this opinion.

16

In *Kammeraad*, the defendant did not want counsel, yet he also refused to represent himself or participate in the trial. His court-appointed attorney, therefore, did not take any action on the defendant's behalf during trial, concluding that it would be unethical to do so. On appeal, the defendant argued that he had been denied the effective assistance of counsel.

The Court of Appeals rejected the argument, instead adopting and applying the "doctrine of forfeiture of counsel," which it found persuasive, to resolve this question. *Id*. at 130, citing *People v Ames*, 2012 IL App (4th) 110513; 978 NE2d 1119 (2012); see also *Ames*, 2012 IL App (4th) 110513 at ¶ 32 ("Another method of relinquishing the right to counsel is forfeiture, which occurs only after severe misconduct."); *State v Jones*, 772 NW2d 496, 505-506 (Minn, 2009); *State v Pedockie*, 137 P3d 716, 722; 2006 UT 28 (2006). Like the defendant in *State v Mee*, 233 NC App 542; 756 SE2d 103 (2014), who "engaged in 'purposeful conduct and tactics to delay and frustrate the orderly processes' " of the lower court's proceedings, *id*. at 562 (citation omitted), the defendant in *Kammeraad* also "forfeited his constitutional right to counsel, considering his refusal to accept, recognize, or communicate with appointed counsel, his refusal of self-representation, and his refusal to otherwise participate in the proceedings," *Kammeraad*, 307 Mich App at 131-132. The Court of Appeals explained that waiver was distinguishable from forfeiture because waiver requires "an intentional and voluntary relinquishment of a known right," while a forfeiture "results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Kammeraad*, 307 Mich App at 132-133.

The defendant in *Kammeraad* presented "a unique situation . . . in a criminal prosecution" where he

17

indisputably and defiantly refused to participate in the trial and other judicial proceedings, indisputably and defiantly refused to accept the services of appointed counsel or to communicate with counsel, regardless of counsel's identity, indisputably and defiantly refused to engage in self-representation, indisputably and defiantly refused to promise not to be disruptive during trial, and indisputably and defiantly refused to remain in the courtroom for his jury trial. [*Id*. at 126.]

Based on the defendant's behavior, the *Kammeraad* Court concluded that a defendant may forfeit his right to counsel through "purposeful tactics and conduct that were employed to delay and frustrate the orderly process of the lower court's proceedings." *Id*. at 131, citing *Mee*, 756 SE2d at 114. In other words, "willful conduct by a defendant that results in the absence of defense counsel constitutes a forfeiture of the right to counsel." *Kammeraad*, 307 Mich App at 131, citing *Mee*, 756 SE2d at 114. The panel cautioned, however, that "a finding of forfeiture of this venerable constitutional right should only be made in the rarest of circumstances and as necessary to address *exceptionally egregious conduct*." *Kammeraad*, 307 Mich App at 137 (emphasis added).[13]

This Court has never recognized the doctrine of forfeiture of counsel by a defendant's conduct.[14] In *Haupt I*, the panel determined that the trial court held implicitly that defendant had given up his right to counsel through his conduct:

As the trial court noted, defendant's actions delayed the case for over two years, in part by repeatedly terminating the services of his retained and

---

[13] The defendant's outrageous behaviors included: (1) claiming in English to not speak English, (2) refusing to dress for trial, (3) demanding a wheelchair despite not requiring one, (4) refusing the assistance of any attorney, and (5) repeatedly interrupting court proceedings. *Id*. at 102-115.

[14] We note that the doctrine of forfeiture by conduct is distinct from the forfeiture doctrine at issue in *King* and *Carines*. The latter addresses "the failure to make the timely assertion of a right" and is a question of preservation. *King*, 512 Mich at 9-10.

18

appointed counsel.[15]  He initially waived his preliminary examination in 2017 because the prosecution made a plea offer, but defendant continually rejected plea offers that his attorneys recommended he should take.[16]  Just one week before his previously adjourned October 2018 trial, defendant moved to remand to district court for a preliminary hearing.  He made his counsel's work impossible.  He refused to communicate with his retained counsel, and his lack of communication continued with his appointed counsel.  [*Haupt I*, unpub op at 4.]

Assuming without deciding that the forfeiture-by-conduct doctrine exists in Michigan, defendant did not forfeit his right to counsel by his conduct.  Compare this case with *Kammeraad*.  Unlike the defendant in that case, at no point did defendant refuse to remain in the courtroom, refuse to participate in the proceedings, insist that the court could not proceed at all, or engage in the kind of purposeful and defiant obstruction and disruption of the court's proceedings that were present in *Kammeraad*.  With respect to defendant's relationship with his attorneys, defendant *objected* to Grabel's withdrawing as counsel, and Grabel stated that defendant had treated him well.  Defendant admittedly did not have a good relationship with Moore, but a breakdown with one appointed attorney, without more,

---

[15] The Court of Appeals made a factual error.  Not only did defendant not fire Grabel, but he also opposed Grabel's motion to withdraw.

[16] A refusal to follow counsel's advice and take a plea deal does not constitute a waiver or forfeiture of the right to counsel.  See generally *Kammeraad*, 307 Mich App at 129-130 (discussing the limited circumstances under which the right to counsel can be waived or forfeited and not mentioning disagreement over plea negotiations); see also *United States v White*, 590 F Supp 3d 1016, 1030, 1032 (ED Mich, 2022) (explaining that a defendant may lose the right to counsel "in three circumstances," none of which involve disagreement over plea negotiations: (1) a knowing and voluntary waiver of the right, (2) forfeiture due to "extremely dilatory conduct," or (3) waiver by the defendant's conduct, such as "refusing the assistance of appointed counsel and persisting in a demand for different counsel"); *Lafler v Cooper*, 566 US 156; 132 S Ct 1376; 182 L Ed 2d 398 (2012) (treating a defendant's rejection of a plea offer based on counsel's advice as a matter of ineffective assistance of counsel rather than as a waiver of the right to representation).

19

does not constitute "the rarest of circumstances" or "exceptionally egregious conduct." *Id*. On these facts, the record does not demonstrate that this case presents the rare circumstances contemplated by *Kammeraad*. Therefore, even if we were to adopt the forfeiture-by-conduct doctrine, it would not apply in this case.[17]

## C. CRITICAL STAGES OF THE PROCEEDINGS

On remand in *Haupt III*, the Court of Appeals held that defendant "was not deprived of counsel at a critical stage of the proceedings such that it constituted a structural error requiring automatic reversal." *Haupt III*, unpub op at 4. Although the panel noted that a hearing on a motion to suppress "could be a critical stage under certain circumstances where the absence of counsel affected and contaminated the entire proceedings," it concluded that those circumstances were not present here. *Id*. at 6.[18]

We disagree with the Court of Appeals' conclusion that the July 2, 2019 hearing on the motion to suppress did not constitute a critical stage of the criminal proceedings. Defendant stood alone against the prosecution at an adversarial hearing involving the

---

[17] The prosecutor also argued that defendant waived his right to counsel via his conduct. Waiver by conduct exists only if "a defendant is warned that he or she will lose counsel if the defendant engages in dilatory tactics, with any misconduct thereafter being treated as an implied request for self-representation." *Id*. at 133. Because the trial court provided defendant with no such warning, waiver by conduct is not an issue here.

[18] The Court of Appeals also held that the pretrial conference on June 25, 2019, was not a critical stage of the proceedings that required representation by counsel because "[n]othing that occurred during the conference substantially affected defendant's rights." *Haupt III*, unpub op at 5. Because we conclude that the hearing on the motion to suppress was a critical stage in this case and that defendant was deprived of counsel and thus entitled to automatic relief, we need not consider whether defendant's pretrial proceeding was also a critical stage.

admissibility of the phone evidence that drove the CSAM charges. In *Wade*, 388 US at 226-227, while discussing the principle that the right to counsel extends beyond the protection of Fifth Amendment rights, the Supreme Court explained:

> It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that *he need not stand alone* against the State at any stage of the prosecution, formal or informal, in court or out, *where counsel's absence might derogate from the accused's right to a fair trial*. The security of that right is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment—the right of the accused to a speedy and public trial by an impartial jury, his right to be informed of the nature and cause of the accusation, and his right to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor. The presence of counsel at such critical confrontations, as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution. [Emphasis added.]

Although this Court has not adopted a formal test for determining what constitutes a critical stage of a criminal proceeding, we have held that both trial and plea hearings constitute critical stages of criminal proceedings. *King*, 512 Mich at 11, citing *Russell*, 471 Mich at 187-188, and *Iowa v Tovar*, 541 US 77, 87; 124 S Ct 1379; 158 L Ed 2d 209 (2004). We have also held that a preliminary examination is a critical stage of a criminal proceeding, although the denial of counsel at that stage is subject only to harmless-error review rather than automatic reversal under binding precedent from the United States Supreme Court. *People v Lewis*, 501 Mich 1, 3-4, 9; 903 NW2d 816 (2017), citing *Coleman v Alabama*, 399 US 1, 11; 90 S Ct 1999; 26 L Ed 2d 387 (1970) (opinion by Brennan, J.).

No binding authorities have established whether suppression hearings are critical stages for purposes of the Sixth Amendment right to counsel. However, several persuasive

21

authorities have held that they are.[19]  See *Henderson v Frank*, 155 F3d 159, 166 (CA 3, 1998), quoting *Michigan v Harvey*, 494 US 344, 358 n 5; 110 S Ct 1176; 108 L Ed 2d 293 (1990) (holding that "[a] pretrial hearing considering the suppression of the defendant's confession is . . . a critical stage because its 'results might settle the accused's fate and reduce the trial itself to a mere formality' "); *United States v Hamilton*, 391 F3d 1066, 1070 (CA 9, 2004), citing *Olney v United States*, 433 F2d 161, 163 (CA 9, 1970) (holding that a suppression hearing is a critical stage "because in many cases the crucial issue is the admissibility of evidence found in the defendant's possession"); *United States v Green*, 670 F2d 1148, 1154 (CA 5, 1981) (holding that "[t]he suppression hearing is a critical stage of the prosecution which affects substantial rights of an accused person; the outcome of the hearing . . . may often determine the eventual outcome of conviction or acquittal"); see also *State v Curry*, 147 P3d 483, 485; 2006 UT App 390 (2006); *Shabazz v State*, 2018 Ark App 399; 557 SW3d 274 (2018).

Through a motion to suppress, defendants may seek to suppress a wide range of material, such as drugs seized in an illegal search, an eyewitness identification made after improper police suggestion, the results of a blood alcohol test, or involuntary inculpatory statements.  In some cases, the evidence a defendant seeks to suppress is so crucial to the state's burden that a conviction cannot be sustained without it.  See *People v Moore*, 391 Mich 426, 431; 216 NW2d 770 (1974); see also *United States v Leon*, 468 US 897, 924

---

[19] Lower federal court decisions and decisions of our sister courts in other states may be persuasive but do not bind our determinations.  See *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

n 25; 104 S Ct 3405; 82 L Ed 2d 677 (1984) (noting "the magnitude of the benefit conferred on defendants by a successful [suppression] motion").

To determine whether the suppression hearing was a critical stage under the circumstances in this case, we find instructive the explanation from the United States Court of Appeals for the Sixth Circuit in *Van* about why the hearing at issue in that case was *not* a critical stage.[20]  In *Van*, a Michigan defendant filed a petition seeking a writ of habeas corpus in federal court to challenge the absence of counsel at a pretrial hearing to determine whether to consolidate criminal charges against multiple defendants and thus require all the defendants to face trial together.  *Van*, 475 F3d at 293, 295.  Four defendants were tried on felony charges stemming from an assault, including the habeas petitioner, who was charged with assault with intent to murder.  *Id*. at 294-295.  The prosecution moved to consolidate the four trials into one.  *Id*. at 295.  All four defendants were present at the hearing, as were three of the defendants' appointed attorneys; however, even though the habeas petitioner had appointed counsel representing him at the time of the hearing and was provided notice of the hearing, his appointed counsel was not present.  *Id*.  The trial court granted the motion to consolidate, and the case proceeded to trial.  *Id*. at 296.

The Sixth Circuit noted that its decisions and those of the United States Supreme Court have offered six possibilities over time for what could constitute a critical stage.

---

[20] That said, we acknowledge a difference between the fact-intensive "critical stage" analysis employed by the *Van* majority and the approach championed by the *Van* dissent. See *Van*, 475 F3d at 317 (Moore, J., dissenting) (opining that courts must "broadly examine whether an unrepresented defendant would be subject to an unacceptable risk of prejudice").  We believe *Van* sets an analytical floor for determining whether a trial court deprived a defendant of the right to counsel, rather than an analytical ceiling.

23

First, "[a] critical stage presents a moment when '[a]vailable defenses may be irretrievably lost, if not then and there asserted.' " *Id*. at 312, quoting *Hamilton v Alabama*, 368 US 52, 53; 82 S Ct 157; 7 L Ed 2d 114 (1961). Second, it may be "one 'where rights are preserved or lost.' " *Van*, 475 F3d at 312, quoting *White v Maryland*, 373 US 59, 60; 83 S Ct 1050; 10 L Ed 2d 193 (1963). Third, a stage may be critical " 'whenever necessary to mount a meaningful defence.' " *Van*, 475 F3d at 312, quoting *Wade*, 388 US at 225. Fourth, a stage may be critical if " ' "potential substantial prejudice to defendant's rights inheres in the . . . confrontation and the ability of counsel to help avoid that prejudice." ' " *Van*, 475 F3d at 312, quoting *Coleman*, 399 US at 9 (opinion of Brennan, J.), in turn quoting *Wade*, 388 US at 227. Fifth, a critical stage has " 'significant consequences for the accused.' " *Van*, 475 F3d at 312, quoting *Bell v Cone*, 535 US 685, 696; 122 S Ct 1843; 152 L Ed 2d 914 (2002). And sixth, it is not a critical stage where "the likelihood for later prejudice arising from the failure to appoint is absent." *Van*, 475 F3d at 312, quoting *Lundberg v Buchkoe*, 389 F2d 154, 158 (CA 6, 1968) (additional quotation marks and citation omitted).

In addressing these six formulations, *Van* noted that they each require consideration of the likelihood that significant consequences have resulted from the absence of counsel and that the proper assessment of such likelihood for "weighty criminal matters of constitutional dimension" is made by applying the reasonable-probability standard. *Van*, 475 F3d at 313. Further, *Van* opined that the best way to make this assessment was by asking whether the defendant had an opportunity subsequent to the hearing at issue to recover or exercise any privilege that may have been lost at that hearing. *Id*.

In applying these standards, the Sixth Circuit looked to the trial court's explanation for granting the prosecution's motion to consolidate: that there was " 'no reason to sever.' "

24

*Id*. at 314. So, this explanation—in addition to a policy favoring joint trials, and the fact that no party could have reasonably argued that the habeas petitioner's conduct was unrelated to another defendant's in the joint trial—supported a conclusion that any motion to sever would have been unsuccessful. *Id*., citing MCR 6.121 and 1B Gillespie, Michigan Criminal Law & Procedure, § 20:29, which in turn cited *People v Hana*, 447 Mich 325; 524 NW2d 682 (1994). Next, when considering whether an opportunity was irretrievably lost or whether incurably damaging material could come out of the hearing, the Sixth Circuit concluded that the consolidation hearing was a procedural hearing. *Van*, 475 F3d at 314-315. Therefore, the interests of judicial economy weighed in favor of not considering the consolidation hearing to be a critical stage because holding otherwise would have effectively allowed defense counsel to give the defendant a " 'get out of jail free card' " by not appearing at such a hearing and obtain an automatic reversal after trial regardless of the merits. *Id*. at 315. Finally, the Sixth Circuit noted that in other states, defendants would be automatically tried together when engaged in a similar enterprise and the defendant bears the burden to move to sever. *Id*. In those other states, if a defendant's counsel failed to appear at a hearing after filing such a motion, the motion would be dismissed for failure to prosecute and could likely be renewed, but it would not be considered the " 'absence of counsel at a critical stage[.]' " *Id*. The Sixth Circuit reasoned that Michigan's policy choice to flip the procedural burden to the prosecution "should not convert defendant's situation into an immutable tactical advantage, required by the Constitution." *Id*.

Here, the Court of Appeals held that defendant's suppression hearing was not a critical stage. *Haupt III*, unpub op at 5. The panel noted that the United States Court of

25

Appeals for the Third Circuit in *Henderson* and the United States Court of Appeals for the Ninth Circuit in *Hamilton* both determined that suppression hearings are critical stages of the criminal proceedings, and the panel had "no doubt that a suppression hearing could be a critical stage under certain circumstances . . . [b]ut not so here." *Haupt III*, unpub op at 6. The panel provided two chief reasons to support its holding. First, this case was unlike *Henderson* and *Hamilton* because no witnesses were called, and defendant merely read his motion into the record at the hearing before it was denied. *Id*. Additionally, once Moore was reappointed to represent defendant at trial, counsel again argued for suppression on a different basis, so defendant had a subsequent opportunity to address the issues raised in defendant's motion. *Id*. at 6-7.

We now conclude that the Court of Appeals erred. Defendant was deprived of the right to counsel at a critical stage.

First, although the panel differentiated *Henderson* and *Hamilton* because defendant had no witnesses and the defendants in those cases did, that was not the only factor in either opinion. In *Henderson*, the Third Circuit listed cross-examination of witnesses as but one of several factors making the defendant's suppression hearing a critical stage. *Henderson*, 155 F3d at 170 (noting that "[t]he judge may not have ruled as a matter of law that the confession was inadmissible, but had a skilled attorney represented Henderson at the suppression hearing, he or she would have confronted the witnesses against Henderson and studied the Commonwealth's trial strategy, in the hopes of preparing a better attack on the factual environment of the confession at a trial by jury"). And in *Hamilton*, the Ninth Circuit did not even consider the mere presence or absence of witnesses when holding the defendant's suppression hearing to be a critical stage and ultimately concluded that it was

26

the taking of testimony *against the defendant* that required such a holding. *Hamilton*, 391 F3d at 1071 (holding that "[t]he taking of testimony against *Hamilton* during his suppression motion without his lawyer present violated his Sixth Amendment right to the assistance of counsel") (emphasis added). Although the presence or absence of witness testimony may be a valid way to differentiate this hearing from those in *Hamilton* or *Henderson*, as in those cases, it is not dispositive here. Whether witnesses were called is but one factor that trial courts may consider when determining whether a stage is critical to a defendant's criminal proceedings.

In concert with the lack of witnesses at the hearing, the Court of Appeals additionally noted that instead of having witnesses called, "the parties made oral argument, with defendant simply reading his motion into the record[.]" *Haupt III*, unpub op at 6. This misrepresents the breadth of the record of that hearing and the context under which it was conducted. To begin, although defendant "simply read[] his motion into the record," he did so after informing the court, "I'm not quite sure how this process works," and the court instructed that defendant could either provide the high points of the motion or read it in full. Later, defendant engaged in a full rebuttal that the prosecution was given the opportunity to further rebut. Defendant's entire pretrial attempt to suppress cell phone evidence was under the conditions of the trial court demanding that defendant proceed unrepresented by counsel. Under these circumstances, where defendant moved to suppress evidence obtained from a search of his cell phone and represented himself at the motion hearing, the legal consequence was far more than simply his having read a statement on

27

the record: he was wholly deprived of the right to counsel to argue the admissibility of evidence that would speak directly to his ultimate guilt or innocence at trial.[21]

The second reason the Court of Appeals gave for not considering the suppression hearing to be a critical stage gives us more pause: that when Moore ultimately represented defendant at trial, Moore moved to suppress the evidence under different grounds. Looking to *Van*, we note that a full and fair opportunity to cure the deprivation of counsel and recoup the legal consequences of proceeding through a critical stage deprived of counsel may lead to a different conclusion. See *Van*, 475 F3d at 313 ("Perhaps the best way of reaching an answer to [the reasonable-probability] query is to ask whether Van had any opportunity, subsequent to the consolidation hearing, to recover or exercise whatever privilege he lost at the hearing").

We conclude that defendant could not wholly recover the privilege he lost during the hearing. Critically, as the Court of Appeals noted, Moore's motion at trial to suppress the evidence proceeded on different grounds. *Haupt III*, unpub op at 6 (noting that "[a]lthough [Moore] argued for suppression on a different basis than defendant had, asserting that the second search warrant authorized a search of defendant's phone, not of the data and images extracted from the phone during the first search, he cited caselaw and

---

[21] There are also ways that the presence of counsel at suppression hearings is important that are not expressly reflected in the transcript, as other courts have persuasively explained. For example, *Henderson* noted two ways that could potentially apply here. First, representation at that stage may be beneficial to negotiating plea-bargain options to avoid trial. *Henderson*, 155 F3d at 170, citing *Grades v Boles*, 398 F2d 409, 413 (CA 4, 1968). Additionally, " 'trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet the case at the trial.' " *Henderson*, 155 F3d at 170, quoting *Coleman*, 399 US at 9.

made a robust and nuanced argument"). Although Moore did move to suppress *some* evidence, defendant was deprived of counsel when seeking to suppress *different* evidence. Defendant sought to suppress data and images—images that were directly correlated to his ultimate guilt—extracted during the first search of the phone. *Id*. Without counsel to represent him when filing or arguing that motion, defendant's motion was unsuccessful and that evidence was admitted. Moore's motion, also unsuccessful, was to suppress evidence obtained during a subsequent search of the phone, when those images had already been held to be admissible. *Id*. We have no doubt that Moore's argument was robust and nuanced but, given that the argument did not pertain to the same evidence considered at the suppression hearing, it was not an adequate cure for the deprivation of counsel at that hearing.

The Court of Appeals' analysis, therefore, misses the mark. A subsequent opportunity to object at trial does not necessarily recreate the lost opportunity to litigate suppression with counsel before trial. Once the trial court denied defendant's motion to suppress, the parties' trial posture changed. The later reappointment of Moore on the morning of trial did not cure the earlier uncounseled rulings because counsel was not given a meaningful opportunity to prepare the case with those evidentiary questions still open. Accordingly, we hold that the July 2, 2019 hearing on the motion to suppress constituted a critical stage of the criminal proceedings.

## IV. CONCLUSION

The Court of Appeals erred when it held that the deprivation of counsel under MCR 6.005(D) did not affect a critical stage of defendant's criminal proceedings. Defendant had

29

the right to proceed through critical stages of his criminal proceedings with counsel unless a valid waiver to that right was invoked, so *King* requires automatic reversal.  Thus, we reverse the Court of Appeals' judgment, vacate defendant's convictions and sentences, and remand to the trial court for a new trial.[22]

Kyra H. Bolden
Megan K. Cavanagh
Elizabeth M. Welch
Kimberly A. Thomas
Noah P. Hood

---

[22] In light of our resolution of this appeal, it is unnecessary to address the portion of the Court of Appeals' opinion addressing defendant's sentencing issues.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v             No. 167315

ALEXANDER JAMES HAUPT,

   Defendant-Appellant.

_____

HOOD, J. (*concurring*).

  I join the majority opinion in full. I agree with the majority that suppression hearings, assuming they are predicated upon motions filed in good faith, represent a critical phase of criminal proceedings. I write separately because I would go further. Instead of addressing each motion in a silo, given the reality of criminal trial proceedings, I would conclude that the six weeks immediately preceding defendant Alexander James Haupt's trial constituted its own critical stage.

  The majority accurately describes the background of this case. Critically, Haupt represented himself between June 10, 2019 and July 23, 2019. Although brief, this period was significant because it encompassed the six weeks directly leading up to Haupt's trial.

  Recall that Haupt represented himself at a June 25, 2019 pretrial hearing, at which Haupt rejected a plea offer. He next represented himself at a July 2, 2019 motion hearing, which pertained to Haupt's motion to dismiss for alleged discovery violations, Haupt's motion to suppress evidence, and the prosecution's motion to use the victim's preliminary-examination testimony at trial. On July 12, 2019, another motion hearing took place, at

which Haupt was not present. At this hearing, the trial court granted the prosecution's motions to strike defense witnesses and exhibits as irrelevant and to compel discovery. Haupt was also not present for a July 18, 2019 status conference. On July 23, 2019, Haupt began the first day of trial without a lawyer. As the trial court began to handle outstanding motions, Haupt requested counsel, and the trial court reappointed attorney Scott Moore.

When assessing this issue, the Court of Appeals considered the individual hearings that occurred during this period and concluded that Haupt had not been deprived of counsel at any critical stage of the proceedings. *People v Haupt (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued April 25, 2024 (Docket No. 351593), p 4. The Court of Appeals explained that Haupt's motion to dismiss was not a critical stage of the proceedings because Haupt had received discovery in the months he was represented by counsel.[1] *Id*. at 5. It further explained that while suppression hearings could be considered critical, such was not the case here because, at Haupt's suppression hearing, no witnesses were called and Haupt simply read his motion into the record. *Id*. at 6. The Court of Appeals further reasoned that the hearing on the prosecution's motion to admit the victim's preliminary-examination testimony was not critical because Moore cross-examined the victim at the preliminary examination, so Haupt did not suffer significant losses related to his confrontation rights. *Id*. at 5.

---

[1] The Court of Appeals also noted that it was unaware of any United States Supreme Court decision holding that similar discovery motions were critical stages of the proceedings. *Haupt*, unpub op at 5.

Like the majority, I disagree with the Court of Appeals' reasoning. I agree with the majority that the suppression motion represented a critical stage of the proceedings. But I view this as a floor that this case surpasses. And I would go further.

Rather than looking at the motions individually, I consider Haupt's six weeks of self-representation in the aggregate. He represented himself in the six weeks immediately preceding his trial. This period—not just any discrete motions that could have been argued during it—was a critical stage of the proceedings. Trials are dynamic. What happens in the preparation period immediately preceding trial can have a significant effect on the outcome of trial.

This is not a novel idea. In *Powell v Alabama*, 287 US 45; 53 S Ct 55; 77 L Ed 158 (1932), the United States Supreme Court described the period between the defendant's arraignment and the start of trial as "perhaps the most critical period of the proceedings." *Id*. at 58. The Court explained that during this period, "consultation, thoroughgoing investigation and preparation were vitally important[.]" *Id*. The United States Court of Appeals for the Sixth Circuit has also held that this period is a critical stage of the proceedings, concluding that "[t]he pre-trial period constitutes a 'critical period' because it encompasses counsel's constitutionally imposed duty to investigate the case." *Mitchell v Mason*, 325 F3d 732, 743 (CA 6, 2003).

Michigan courts have also recognized that the pretrial preparation stage is a critical stage of the proceedings. The Court of Appeals has held: "Depriving a defendant of the ability to communicate with his or her attorney during pretrial preparations—a critical stage of the proceedings—prevents the attorney from fulfilling the attorney's duty to investigate and prepare possible defenses." *People v Hoang*, 328 Mich App 45, 60; 935

3

NW2d 396 (2019).  Recently, in *People v King*, 512 Mich 1; 999 NW2d 670 (2023), this Court held that the defendant was "deprived of his right to counsel at critical stages of the criminal proceedings" where "defendant was deprived of his right to counsel, at a minimum, during (1) *pretrial preparations, including at least one pretrial hearing*, (2) jury selection, (3) opening statements, (4) judge's instructions, and (5) direct and cross-examination of key witnesses." *Id*. at 16 (emphasis added).

Here, in the same manner, Haupt was denied counsel during a critical pretrial preparation stage.  A defendant who is not represented by counsel in the weeks immediately preceding trial faces a serious risk of prejudice.  Haupt's lack of counsel hindered his ability to conduct pretrial investigation and otherwise prepare for trial.  The motions Haupt filed during this period lacked legal sophistication.  By way of example, when discussing his motion to dismiss for alleged discovery violations, the prosecutor opined that Haupt misunderstood what a *Brady*[2] violation was.

Haupt's motion to suppress evidence was also disorganized and legally underdeveloped.  Neither the United States Supreme Court nor this Court has decided whether a hearing on a motion to suppress evidence is a critical stage of the proceedings. The United States Court of Appeals for the Ninth Circuit has held that a "hearing on [the defendant's] motion to suppress (at least the portions of the consolidated proceedings in which evidence relating to [the defendant's] case was heard) was a critical stage of his prosecution." *United States v Hamilton*, 391 F3d 1066, 1071 (CA 9, 2004).  Similarly, the United States Court of Appeals for the Third Circuit has held that "[a] pretrial hearing

---

[2] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

considering the suppression of the defendant's confession is . . . a critical stage because its results might settle the accused's fate and reduce the trial itself to a mere formality." *Henderson v Frank*, 155 F3d 159, 166 (CA 3, 1998) (quotation marks and citation omitted).

As stated, the suppression hearing was critical. The most incriminating evidence in this case were images, text messages, e-mails, and an audio recording found on Haupt's cell phone. This evidence served as the basis for the charges brought against Haupt. Fourth Amendment jurisprudence is complicated and nuanced. When a defendant is unrepresented at a suppression hearing, the potential for prejudice is high. Had the motion to suppress been argued successfully, it would have had a significant impact on the defense.[3]

Further, "the 'critical stage[s]' at which counsel must be present are not limited to formal appearances before a judge." *Mitchell*, 325 F3d at 743 (citation omitted; alteration in *Mitchell*). In addition to the pretrial hearing, status conference, and motion hearings that occurred during this time frame, the six weeks before trial were a vital time for trial preparation outside the courtroom. When Moore was eventually reappointed at trial, he lamented his lack of preparedness. Moore was essentially given less than 24 hours to prepare for Haupt's trial.

Not every pretrial period will constitute a critical stage of the proceedings, just as "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to

---

[3] I disagree with the Court of Appeals' contention that the suppression hearing was not critical because no witnesses were called. I believe the fact that Haupt merely read his motion into the record at the hearing further illustrates a lack of legal sophistication.

counsel." *Morris v Slappy*, 461 US 1, 11; 103 S Ct 1610; 75 L Ed 2d 610 (1983). But given the specific circumstances of this case, Haupt was denied his right to counsel at a critical pretrial preparation stage of the proceedings.

Haupt did not validly waive his right to counsel at the June 10, 2019 status conference. The trial court imposed self-representation on Haupt, without meeting any of the requirements to effectuate a valid waiver of the right to counsel. Haupt also did not forfeit his right to counsel through his actions or conduct. Haupt was self-represented between June 10, 2019 and July 23, 2019, a critical pretrial preparation stage immediately preceding trial. Because Haupt was denied his Sixth Amendment right to counsel at a critical stage of the proceedings, this Court is right to reverse the decision of the Court of Appeals, vacate Haupt's convictions and sentences, and remand to the trial court for a new trial.

I agree fully with the majority opinion. But I would go further on the basis of the specific facts of this case.

Noah P. Hood

6

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                          No. 167315

ALEXANDER JAMES HAUPT,

      Defendant-Appellant.

_____

ZAHRA, J. (*concurring*).

Under the facts of this case, I concur with the majority opinion's holding that the Court of Appeals erred when it held that the deprivation of counsel under MCR 6.005(D) did not affect a critical stage of defendant's criminal proceedings. Specifically, I agree with the majority opinion that the July 2, 2019 hearing on defendant's motion to suppress constituted a critical stage of the criminal proceedings. Because the Court of Appeals previously found there to be a violation of defendant's right to counsel at this hearing,[1] a holding this Court did not disturb when partially vacating the Court of Appeals' judgment and otherwise denying leave to appeal at an earlier stage in the proceedings, I agree with the majority opinion that defendant was deprived of counsel during a critical stage and is

_____

[1] *People v Haupt*, unpublished per curiam opinion of the Court of Appeals, issued September 23, 2021 (Docket No. 351593) (*Haupt I*).

therefore entitled to a new trial.[2]  I write separately simply to make clear that my agreement is grounded in the facts of this case.

First, I would decline to analyze the merits of defendant's argument that the trial court erred by failing to comply with MCR 6.005(D) and that his Sixth Amendment right to counsel was violated.  As noted in the majority opinion, the Court of Appeals in *Haupt I* agreed with defendant that the trial court did not comply with the substance of *People v Anderson*[3] and MCR 6.005(D), but went on to hold that relief was unavailable for this plain error under *People v Carines*.[4]  This Court vacated *Haupt I* only "to the extent that it is inconsistent with our decision[] in [*People v King*, 512 Mich 1; 999 NW2d 670 (2023)]" and otherwise denied leave to appeal.[5]  As the majority opinion acknowledges, "*King* did nothing to cast doubt on the *Haupt I* panel's conclusion that an MCR 6.005(D) error occurred below."  Therefore, "we left intact the Court of Appeals' conclusion that there was a violation of *Anderson* and MCR 6.005(D)."

In my view, this should end the analysis as to whether defendant was impermissibly deprived of counsel.  Because this Court's previous order left undisturbed the Court of Appeals' holding that the trial court violated *Anderson* and MCR 6.005(D), the only question properly before the Court is whether this error entitles defendant to relief.  Yet the majority opinion goes on to substantively analyze the issue and explicitly "agree with the

[2] I also agree with the majority opinion that, even if this Court had adopted the doctrine of forfeiture by conduct, it would not apply under the facts of this case.

[3] *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976).

[4] *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999).

[5] *People v Haupt*, 513 Mich 912 (2023).

2

*Haupt I* panel that the trial court failed to substantially comply with the requirements of *Anderson* and MCR 6.005(D)." This analysis is not essential to the determination of this case. Because, under the procedural posture of this case, it is unnecessary to opine on the merits of defendant's argument under MCR 6.005(D), I would decline to do so.

Lastly, I wish to clarify that, while I agree with the majority opinion that the July 2, 2019 hearing on defendant's motion to suppress constituted a critical stage based on the facts of this case, it does not follow that *all* motions to suppress constitute critical stages. As the majority opinion notes, no binding authorities have established whether all suppression hearings are critical stages for purposes of the Sixth Amendment. And the facts of this case do not require the Court to draw this line. I agree with the majority opinion that the specific suppression hearing at issue constituted a critical stage because "[defendant] was wholly deprived of the right to counsel to argue the admissibility of evidence that would speak directly to his ultimate guilt or innocence at trial" and defendant did not "wholly recover the privilege he lost during the hearing" when his reappointed counsel moved to suppress different evidence on different grounds. Because the facts of this case support the holding that the July 2, 2019 hearing constituted a critical stage, we need not more broadly consider whether suppression hearings with different factual circumstances would also constitute a critical stage. Over time, it will be for this Court to explore the contours of which types of suppression hearings constitute critical stages under the facts presented.

In all other respects, I concur with the majority opinion.

Brian K. Zahra
Richard H. Bernstein

3